## HARDEMAN-KING CO. et al. v. HUDSON.

No. 22400. Opinion Filed Sept. 29, 1931.

H. C. Thurman and Byrne A. Bowman, for petitioners.

H. M. Shirley, J. Berry King, Atty. Gen., and Robert D. Crowe, Asst. Atty. Gen., for respondent.

McNEILL, J. This is an original action to review an order and award of the State Industrial Commission rendered on May 2, 1931, awarding compensation to the respondent. N. L. Hudson. On March 21, 1931, respondent filed his first notice of injury and claim for compensation. In reference to the date of the accident, he stated that it was a "series of heavy lifting starting about October 1, 1930, continuing until he could not work," and that the cause of the accident was "lifting heavy machinery." He described the nature and extent of his injury as "permanent injury to back and side." He also stated in said notice that he quit work on account of injuries on February 28, 1931, and that the name of his attending physician was Dr. Albert Cates. On March 24, 1931, petitioners filed an answer in which the petitioners stated as follows (omitting caption):

"Comes now the respondent and insurance carrier, and deny

"First. That this claimant suffered an accidental injury in the course of his employment.

"Second. That if he did suffer a disability that it was a natural result of his work and not an accidental injury as contemplated by the Workmen's Compensation Act.

"Third. Respondent and insurance carrier maintain that if this claimant did suffer an accident in the course of his employment, that he has been in and around Oklahoma City since the date of the alleged accident and was not prevented from reporting said accident to his employer so that medical attention might be furnished, if necessary. And, under section 7292 of the Compiled Oklahoma Statutes of 1921, it is required that the alleged injury be reported within thirty (30) days, and the respondent and insurance carrier maintain that by reason of the claimant's failure to report such an alleged accident, that the respondent and insurance carrier's rights have been prejudiced and request that this claim be dismissed.

"Fourth. Respondent and insurance carrier request that this honorable Commission order this claimant to state definitely the time of his alleged accident in order that they may know how to proceed in the defense of this alleged accident.

"Hardeman-King Company, Respondent.
"New York Indemnity Co., Insurance Carrier.
"By E. C. Chastain, Adjuster."

On March 26, 1931, the petitioners filed employer's first notice of injury and stated therein that the employee was not injured

in the course of his employment to their knowledge; that he did not quit work as a result of his purported injury to their knowledge, and that "We have no knowledge of an accident."

On April 6, 1931, respondent filed his reply to the answer of petitioners and stated therein "that the accident which caused the trouble in the claimant's back happened on or about October 1, 1930"; that "the claimant was not wholly or totally disabled at the time from performing his services under great handicap until the 28th day of February, 1931, at which time he became totally disabled and unable to work"; that, being in a weak condition by reason of contracting tuberculosis from a man who had been permitted to work with the rest of the men, and by reason of lifting of material such as engines and heavy sacks of flour and feed, he received a curvature of the spine, causing him great pain and suffering and causing total disability; and by reason of his condition prayed the Commission to award him a lump sum in the sum of $7,000.

On April 17, 1931, said matter came on for hearing before the Commission. On May 2, 1931, the Commission made its order and award in part as follows (omitting caption):

"Now, on this 2nd day of May, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held in Oklahoma City before Chairman Thos. H. Doyle, on April 17, 1931, by agreement of all parties, at which hearing the claimant appeared in person and by his attorney. H. M. Shirley, the respondent and insurance carrier being represented by E. C. Chastain; and the Commission, after reviewing the testimony taken at said hearing and all the records on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"(1) That, on or about the 15th day of October, 1930, the claimant was in the employ of N. L. Hudson and engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental injury, arising out of and in the course of his employment, consisting of an injury to his back and side from constant strain at lifting heavy weights.

"(2) That claimant's daily average wage at the time of said accidental injury was $3.50.

"(3) That by reason of said accidental injury aforementioned, the claimant has been unable to perform his ordinary manual labor from the date of March 1, 1931, to the present time, and is now temporarily totally disabled from performing his ordinary manual labors.

"The Commission is of the opinion: By reason of the foregoing facts, that said claimant is entitled to compensation for temporary total disability from the date of the accident on March 1, 1931, up to May 1, 1931, being eight weeks beyond the five-day waiting period, at the rate of $13.46 per week, and that said compensation should be continued from the 1st of May, 1931, at the rate of $13.46 per week until otherwise ordered by the Commission.

"It is therefore ordered: That within 15 days from this date the respondent or insurance carrier pay to claimant the sum of $107.68 as temporary total disability from the 1st of March, 1931, to May 1, 1931, or a total of eight weeks beyond the five-day waiting period, and that the respondent or its insurance carrier continue to pay the claimant compensation at the rate of $13.46 per week until otherwise ordered by the Commission.

"It is further ordered: That within 30 days from this date, the respondent or its insurance carrier file with the Commission, receipt or other proper report evidencing compliance with the terms of this order."

The respondent was about 42 years of age, and had been working for the Hardeman-King Company, petitioners, for approximately three years up to and until the 28th day of February, 1931. His work consisted of handling sacks of meal weighing from 100 to 200 pounds. He was required to weigh the sacks of meal, sew them, and then throw them back. In his own language he describes the work as follows:

"We take off this cow feed in 100-pound sacks and two men does it. One sets off and the other one sews. I am the sewer. I weigh it and sew it and throw it back. * * * Sometimes we throw 150 or 200 sacks, stacking them back, maybe most as far as from here to the cook table in there (about 25 feet) to get room to hold that much. Stacking it all around us."

In addition to this work, he was required to assist in moving the motor machinery. In describing the injury he received, he states as follows:

"Q. When was the first time that you received an injury from lifting heavy machinery at Hardeman-King's that you remember of? A. Between the 15th of September and the 1st of October. Somewhere about along there. Q. What were you moving? A. Moving a motor. Q. What do you consider the weight of this motor? A. I couldn't say definitely. Q. Well, approximately? A. Well, if I was going to guess at it. I would guess it to weigh 1,200 pounds. Maybe more—I couldn't say definitely. Q. Who

was working on this motor at the time you lifted it? A. Vernon Foreman. Q. Did you say anything to Mr. Foreman at the time you thought you hurt yourself? Just what did you say? A. I told him, we were lifting this motor on this block, you see, about, I judge to be about two feet high and it is a big pillar—I would call it a pillar. You had to bring the motor around this way you see (indicating to the right) on to the block, you see. Bring the motor around to the right of this pillar and lift this on there. Me and him by ourselves. Well. I hurt my back and it felt like something slipped in my back, and I told Vernon Foreman, I said, 'I have hurt my back and I am going to get someone else to help lift this.' But I do not remember who it was that I got. Q. After this lift, did you go to the doctor? A. Yes, sir. Q. What doctor did you go to? A. Dr. Cates. Q. And he examined you at that time? A. Yes, sir. Q. How long had Dr. Cates been your doctor? A. He had been my doctor for about 15 years. Q. Was he your family doctor? A. Yes, sir. Q. Where did Dr. Cates first wait upon you during the time he was your family physician? A. Tupelo. Q. Where is Tupelo located—what county? A. Coal county. Q. Then, when was the next time that you remember you did some heavy lifting there? A. In October. Q. In October. After this lifting in September, did your back continue to give you trouble? A. Yes, sir. Q. Can you turn over? A. Yes, sir. * * * Q. Your work is hard work, that is, most of it is heavy? A. Yes, sir, all of it is heavy. We continue to move motors all the time—from July, August September, October—All along there. * * * Q. You did not notice the pain until you quit working, moving the motor? A. No, I just told you that it hit me just as quick as I made the lift. Q. Well, let's get this straight. Were you still lifting when the pain hit you, or had you stopped? A. We were still lifting when I felt the pain. Then we let the motor down and I told Vernon I was going to get someone else. Q. Was Vernon the foreman? A. No, that is just his name. Q. Who was the foreman? A. Harris. Q. Was he in charge there over you? A. Yes. Harris is the general foreman, but I take orders from Herbert Greenhaw, too. Q. Now, this was between the 15th of September, and October 1st. You do not know the exact date? A. Yes. * * *"

The respondent states that he went to Dr. Cates and had an X-ray examination made of his back, and on the 3rd of October, while moving another motor out of the building with Herbert Greenhaw, he hurt his back and states in reference to moving this motor as follows:

"Well, we pushed the motor on up to the top of the steps and I quit then. After we got out and me and Herbert was standing there in the doorway, and the other boys took the motor on and put it in the truck and carried it to the White Electric Company. While me and Herbert stopped there in the door I said to Herbert, I said 'I hurt my back lifting on that.' 'Well,' he said, 'You ain't got nothing on me; I hurt myself too.' 'Where did you hurt yourself,' I said. He said 'My finger.' Well, about two weeks later I was sacking meal and he was around there where I was. Then—he is a miller you see. He was around there making some five and tens. He was around there screwing up on his rolls to make his meal better. And he helped me once in a while on his meal. I say, 'Herb you know the other day I told you I hurt my back?' and he said 'Yes.' 'Well, it still hurts, that is, ever since I hurt my back the first time.' I says, 'When I lift it makes it hurt me.' And that is all that was said."

Vernon Foreman, another employee, corroborates the respondent in reference to his hurting his back, and states as follows:

"Q. Who was helping you move that motor at that time; moving it from one block to another? A. Herbert Greenhaw and myself, beside the claimant.* * * Q. Do you remember of him saying when he lifted the engine, he hurt himself? A. Yes, sir. Q. Did he go and get someone else? A. Yes, sir. * * * Q. That is when he hurt his back? A. We got it about one-half up when he complained."

Dr. Albert Cates testified that he had known respondent for about 14 years, and had been his family physician for a part of that time, and on October 3, 1930, the respondent came to his office and complained "of a pain in his left side just below the shoulder blade. I stripped him off, and on examination I found a bulging of the left side, and a lateral curvature of the spine to the left"; that he had an X-ray examination made at the time; that respondent stated that he was moving a motor, and that he strained his side; that all he could see from an examination was the bulging of his left side and the curvature of the spine. The doctor testified as follows:

"Q. What do you think of his injuries, Doctor; do you feel he will ever be able to work again? A. I don't think he will be able to do any hard manual labor. Q. Do you think he will always be totally disabled to do the work he was doing? A. It is my opinion that he will."

Dr. McBride testified for the petitioners and stated that he was unable to tell what was the matter with respondent, and in part testified as follows:

"Q. The fact that he was doing heavy lifting kept aggravating it and making it worse? A. It depends on what he did. You

say heavy lifting; that doesn't mean anything to me. If he did something that would tear loose certain ligaments or muscles, and he should keep on working, he would feel that pain, but it would have a tendency to get well, and if it didn't get well, he would not work very long. Now, a man has a little sprain when he says he has a catch in his back, and some call lumbago, and some a strain, which may cause rheumatism and may cause stiffness. Q. And caused by accident? A. We usually attribute it to an accident."

Counsel for petitioners state in their brief as follows:

"Sometime about the last of September, or the first of October, the claimant strained his left side while lifting a heavy motor. Inasmuch as Vernon Foreman, his fellow employee, testified that Hudson remarked about straining his side, and inasmuch as Dr. Cates testified that Hudson called on him for an examination, complaining of a pain in his left side, on October 3, 1930, we believe that the claimant actually did slightly strain his side in October, while lifting a heavy motor."

However, petitioners contend that there is no evidence supporting the Industrial Commission's finding that the strain in October caused the disability in April, 1931. In this petitioners are in error. There is evidence of a positive injury received by respondent on or about the last of September, 1930, and also in October, 1930. Respondent performed continuous heavy work up to the time he was forced to quit, handling heavy sacks of meal and occasionally assisting in moving heavy motors, weighing over 600 pounds. Dr. Cates testified, in part, as follows:

"Q. If the facts develop the claimant was able to work four or five months after an alleged accident, would it be your opinion that that strain was the cause of his present disability? A. I don't think the strain alone could be the cause of his present disability. Like I explained, my opinion is it was caused from constant lifting, and the strain could cause an exaggeration of it."

The Commission found that respondent, on or about the 15th of October, 1930, sustained an accidental injury while engaged in a hazardous occupation arising out of and in the course of his employment, consisting of an injury to his back and side from constant strain at lifting heavy weights. There is competent evidence reasonably tending to support this finding.

Petitioners also urge that the order and award is not reasonably supported by any evidence. and is contrary to law, in that the claimant did not notify his employer of his injury within 30 days thereafter, and did not excuse the giving of such notice or show that the employer had not been prejudiced by the lack of notice.

Vernon Foreman, an employee, testified that respondent hurt his back in the latter part of September, 1929, when one of the motors was being moved by the witness, Herbert Greenhaw, and respondent, and that respondent stated at the time of the receipt of the injury that he had been hurt, and then went to get someone else to take his place. Respondent testified that Harris was the general foreman, and that he also took orders from Herbert Greenhaw. The fact and circumstances concerning the announcement of this injury were known to the employees and to Herbert Greenhaw, from whom respondent also received orders in the performance of his work. Was this sufficient notice to give respondent's employer an opportunity to make an investigation of this injury, so as to excuse respondent from his failure to give the written notice of his injury within 30 days after the injury thereof, as provided for in section 7292, C. O. S. 1921, which provides, in part, as follows:

"Notice of an injury, for which compensation is payable under this act, shall be given to the Commission and to the employer within 30 days after injury. * * * The notice shall be in writing. * * * The failure to give such notice, unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this act"?

This court, in the case of Cameron Coal Co. v. Collopy, 102 Okla. 207, 228 P. 1100, wherein the injured employee gave no actual notice whatever of his injury and delayed until November following the accident in May of the same year in giving written notice and then only to the Industrial Commission, states as follows:

"* * * In the event claimant could show that the employer, in fact, had actual notice within the time and did in fact make an investigation or had all opportunity to do so, this would certainly show no prejudice. * * *"

This court, in an opinion by Commissioner Foster in the case of Oklahoma Gas & Electric Co. v. Thomas, 115 Okla. 67, 241 P. 820, quotes from the case of Hayward v. Westleigh Colliery Co., Limited, reported in Ann. Cas. 1917D, 877, as follows:

"'The statute requires that notice should be served, and if it is not served the party

who should have served it is in default; he must excuse that default, and I think the burden of proof in the first instance rests upon him. But, if he gives evidence from which it may be reasonably inferred that the employer has not been prejudiced, I think then the burden of proof is shifted from his shoulders on to the shoulders of his employer, and if the employer is in a position to prove notwithstanding this evidence that he is prejudiced in some particular matter. he is bound to do so. * * * "

The question of prejudice is well analyzed in the English case of Shearer v. Miller (1899) 2 F. 114, 37 Sc. L. R. 80-Ct. of Sess., wherein it was held in a claim for compensation, where no notice of the accident had been given to the employer, the onus of showing that the employer had not thereby been prejudiced in his defense lies on the workman claiming compensation. In the discussion of this case, Lord Adam said:

"The appellant by failing to give timeous notice has barred himself from maintaining proceedings under the act, and he can only surmount the bar by proving, either that the respondents were not prejudiced in their defense, or that the want of such notice was occasioned by mistake or other reasonable cause. But while I think that the onus lies, in the first instance, on the appellant, I do not think that the act contemplated separate or preliminary proceedings with the view of determining whether the employer had been prejudiced or not. * * * The claimant is put to prove a negative, and I should think that very slight evidence would be sufficient to shift the onus on the employer, who certainly is in a position to prove the prejudice, if any, which he may have suffered."

The Commission may excuse the failure to give the notice of an injury for which compensation is claimed on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier, or employer, as the case may be, has not been prejudiced thereby. otherwise such failure to give said notice shall operate as a bar to any claim under the Workmen's Compensation Act. Prima facie, by failure to give such notice, a presumption of prejudice arises. The employee is in default. He is required to produce evidence to overcome this presumption. Every case must be considered in its entirety based upon all the facts and circumstances appearing in evidence. The question of whether or not petitioner was prejudiced by its failure to have the written notice of the injury for which respondent is claiming compensation as provided by section 7292, C. O. S. 1921, was a question of fact to be determined by the Commission like any other question of fact, from all the facts and circumstances in the case. Bradshaw v. Eagle Picher Lead Co., 121 Kan. 525, 247 P. 644. The Commission has found against the contention of petitioners, and if there is any competent evidence reasonably tending to support the finding of the Commission, the same is conclusive on this court.

In this case, the respondent continued in his work in good faith for petitioners after he received the first injury to his back. He promptly went to his family physician for treatment and made an honest effort to continue in his work. He did not seek compensation, but continued at his work. Respondent testified that he received orders from Herbert Greenhaw. The employee Vern Foreman testified that Greenhaw was present at the time respondent received his injury to his back.

Under the facts and circumstances in this case, in the absence of any evidence on the part of petitioners to show wherein they had been prejudiced by the failure to receive the written notice provided for by 7292, C. O. S. 1921, we are of the opinion that the Commission was justified in excusing the respondent from giving this notice as determined by the Commission in the granting of the award. There is evidence reasonably tending to support the finding and award of the Commission, and it is hereby affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, CULLISON, and KORNEGAY, JJ., concur. ANDREWS, J., absent.

Note.—See under (1) annotation in L. R. A. 1916A, 86, 244; L. R. A. 1917D, 139; L. R. A. 1918E, 562.